UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESPERANZA DAVILA, on behalf of decedent's minor children, and as administrator of the ESTATE OF HECTOR HERNANDEZ,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO, PATRICK KELLY, and ANTONIO CORRAL,<br><br>Defendants. | No. 17 CV 8145<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Chicago Police Officers Kelly and Corral shot and killed Hector Hernandez in his girlfriend's home where he was visiting his two-and-a-half-year-old son. Esperanza Davila, Hernandez's girlfriend, filed this lawsuit against the officers and the City on behalf of Hernandez's son, daughter, and his estate. Defendants move to dismiss, and for the reasons discussed below, that motion is granted.

**I.  Legal Standards**

A complaint may be dismissed pursuant to Rule 12(b)(6) if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 570). All reasonable inferences are drawn in favor of the non-movant. *Squires-Cannon v. Forest Preserve Dist. of Cook Cty.*, 897 F.3d 797, 802 (7th Cir. 2018).

## II. Background

On April 7, 2014, while Hector Hernandez was visiting his two-and-a-half-year-old son at his girlfriend's home, defendant Chicago Police Officers Patrick Kelly and Antonio Corral entered the home and without provocation shot and killed Hernandez. [29] ¶¶ 6, 14, 16, 32.[1] Other Chicago police officers were present and directed tasers at Hernandez. *Id.* ¶ 30. They had him cornered in the kitchen when Officers Kelly and Corral fired thirteen rounds into Hernandez's back. *Id.* ¶¶ 30, 33. Esperanza Davila, Hernandez's girlfriend who was pregnant with the couple's second child, was also present. *Id.* ¶¶ 15, 17.[2]

At the time of the shooting, Officer Kelly had an extensive history of violent and alarming behavior both on and off-duty. *Id.* ¶ 36. The City knew that Kelly had been arrested for assault or battery at least twice and that a long list of complaints had been filed against him for violence and misconduct ranging from using derogatory racial slurs, to assaulting a superior officer. *Id.* ¶¶ 37, 39. In one especially disturbing instance, Kelly tased a pregnant woman without justification, causing a miscarriage. *Id.* Different City entities, including the Office of Professional Standards, the

---

[1] Bracketed numbers refer to entries on the district court docket. The operative complaint is [29].

[2] Although the plaintiffs include the names of the children in some of their filings, under Fed. R. Civ. P. 5.2, minors' full names may be omitted from the public record.

Independent Police Review Authority, and the Bureau of Internal Affairs, investigated Kelly's behavior on many occasions. *Id.* ¶¶ 41, 44. But the City sustained only one allegation, for an assault on a fellow police officer, allowing most of Kelly's misconduct to go unpunished. *Id.* ¶ 55. The City was also aware that Kelly had been named as a defendant in at least six civil-rights lawsuits. *Id.* ¶ 45. Despite knowledge of Kelly's violent tendencies, the City kept him on as a police officer. *Id.* ¶ 46.

The City's treatment of Kelly's misconduct was not unique; between 2004 and 2011, of the 968 complaints filed against Chicago police officers for domestic battery, only 3% resulted in an officer's termination or resignation. *Id.* ¶ 67. The Police Accountability Task Force Report 2016 found that "no dedicated system exists to identify and address patterns or practices" of complaints against officers, and since "its inception, [the Independent Police Review Authority] has had the power to examine patterns of complaints when investigating misconduct, but has not exercised it." *Id.* ¶ 76. When investigating the Chicago Police Department in 2017, the Department of Justice found: from 2011–2016 fewer than 2% of the 30,000 complaints of police misconduct were sustained, the City did not investigate most of the cases it was legally required to, and that when it did, investigations were designed to justify an officer's actions rather than seek the truth. *Id.* ¶ 77. The City and police officers acknowledged that a code of silence existed and that it led to lying and affirmative efforts to conceal evidence. *Id.* When officers were disciplined, it was for misconduct far less serious than the conduct complained about. *Id.* The City had no early warning system to find, rehabilitate, discipline, or terminate officers with histories of

3

misconduct. *Id.* ¶ 89. The City and its Law Department also consistently failed to cooperate with discovery requests in lawsuits involving police officers, resulting in sanctions. *Id.* ¶¶ 106–107.

After Hernandez's death, Davila hired lawyers and they submitted a FOIA request on her behalf. *Id.* ¶ 115. The City responded but redacted the names of the officers involved. *Id.* ¶ 116. In line with its practice of failing to cooperate with discovery, the City repeatedly failed to disclose evidence of Officer Kelly's role in the Hernandez shooting in other lawsuits where he was a defendant. *Id.* ¶ 113. After Kelly shot Hernandez, the Independent Police Review Authority initiated an investigation and created a LOG number and U-file number for the incident. *Id.* ¶ 114. But when plaintiffs' counsel in other cases requested all documents relating to incidents involving Kelly, the City did not produce or identify anything tying him to the Hernandez investigation. *Id.* ¶¶ 117–27.

## III. Analysis

Davila brings claims on behalf of Hernandez's children and on behalf of his estate. At the time plaintiffs filed the complaint, the children were three and six years old. [29] ¶¶ 6, 7. The minors assert substantive-due-process claims and a state-law wrongful-death claim against Officers Kelly and Corral. The children also bring a wrongful-death claim against the City, and together with Hernandez's estate (raising a violation of Hernandez's Fourth Amendment right to be free from excessive force), bring *Monell* claims based on the City's code of silence, failure to maintain a proper early warning system, failure to investigate officer misconduct, and failure to

4

discipline. Finally, the children bring a claim for the denial of access to the courts against the City (again asserting *Monell* liability). Defendants move to dismiss all counts.

A.   **Substantive Due Process**

The minors allege that Officers Kelly and Corral violated their substantive-due-process rights to their father's companionship. Defendants argue that plaintiffs' claims are time-barred and that they failed to allege that the officers violated the children's constitutional rights.

*1.   Statute of Limitations*

For § 1983 actions, federal courts look to state law to determine the statute of limitations, tolling, and details of application. *Anderson v. Romero*, 42 F.3d 1121, 1123–24 (7th Cir. 1994); *Ray v. Maher*, 662 F.3d 770, 772–73 (7th Cir. 2011). In Illinois, federal courts borrow the two-year statute of limitations for personal injury actions. 735 ILCS 5/13-202. If a cause of action accrues while the plaintiff is a minor, the statute of limitations is tolled until her twentieth birthday. 735 ILCS 5/13-211(a). Section 1983 claims are personal to the injured party, so the claims by the estate are tied to Hernandez, and his children's status as minors does not toll claims asserted on behalf of the estate. *See Ray*, 662 F.3d at 774. But the minors' status tolls claims based on constitutional injuries to the minors themselves. *Id*. The children's claims for loss of their father's companionship implicate their constitutional rights, and so the statute of limitations is tolled. Because neither minor has turned eighteen, their due-process claims are timely.

5

## 2. Right of Companionship

Though their claims are timely, the minors have not alleged that Officers Kelly and Corral violated their substantive-due-process rights. The Supreme Court has recognized a parent's right to care for and raise his children without government interference, *see, e.g., Stanley v. Illinois*, 405 U.S. 645, 651 (1972), but the Court has not found a violation of that right where the action was not directed at the familial relationship. *See Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005). Affording a constitutional due-process right to recover against the state for actions not directed at the familial relationship creates "the risk of constitutionalizing all torts against individuals who happen to have families." *Id.* Though the relationship between minors and their parents "warrants sharply different constitutional treatment" than that between a parent and an adult child when a direct action is involved, *see id.*, extending that right to actions that indirectly affect the parent-minor relationship is an unnecessary and overbroad reading of the due-process clause.[3] Officers Kelly and Corral did not kill Hernandez to sever the children's continued right to companionship with their father. Their actions had the devastating effect of rendering the minors fatherless, and as a result the children can bring wrongful-death claims and the estate can seek relief for Hernandez's constitutional injuries (within established time limits). But the officers did not intend to interfere the

---

[3] The Ninth and D.C. Circuits have held that state actions that indirectly affect a minor's continued companionship with a parent can constitute a due-process violation. *See Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1169–70 (9th Cir. 2013); *Franz v. United States*, 707 F.2d 582, 594–95 (D.C. Cir. 1983). This expansive reading of the due-process clause runs counter to the Seventh Circuit's admonition not to constitutionalize every tort committed by the state against a family, and I follow the Seventh Circuit's lead here.

6

minor's substantive-due-process rights, and so a claim based on those rights is not the appropriate avenue to seek their relief. *See Khan v. Gallitano*, 180 F.3d 829, 835 (7th Cir. 1999) ("[W]e will not create a redundant federal right that simply mirrors the available state-law tort.").

### B. *Monell* Liability

Plaintiffs argue that the City is liable for Officer Kelly's and Corral's actions because of its code of silence, failure to maintain a proper early warning system, failure to investigate officer misconduct, and failure to discipline. "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."). So, plaintiffs' claims against the City must be based on the officers' underlying constitutional violation.

Defendants argue that plaintiffs' claims are barred by the statute of limitations. Because the officers did not violate the children's substantive-due-process rights, the Illinois tolling provision for minors does not matter—no constitutional violation was alleged and the City cannot be liable under a *Monell* theory without an underlying violation. *Sallenger v. City of Springfield, Ill.*, 630 F.3d

7

499, 504 (7th Cir. 2010). The *Monell* claims based on the substantive-due-process rights of the minors are dismissed for failure to state a claim.

As for Hernandez's excessive-force claims, his estate had two years from the date his claim accrued to file suit. *See Shropsear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 594 (7th Cir. 2001); 735 ILCS 5/13-202. A § 1983 claim accrues when the plaintiff discovered his injury and that the defendant, or an employee of the defendant acting within the scope of his employment, may have caused the injury. *Liberty v. City of Chicago*, 860 F.3d 1017, 1019 (7th Cir. 2017). Because Hernandez (and his estate) discovered his injury immediately, his claims accrued on the day the officers shot him, April 7, 2014, more than two years before plaintiffs filed their claims. The estate's claims, therefore, are time-barred unless a tolling doctrine applies. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). As noted above, that the minor children may be beneficiaries of the estate does not mean that the estate's claims are tolled during their childhood; tolling must be applicable to the estate or Hernandez directly.

   1.   *Equitable Tolling*

Under Illinois law, a "limitations period may be equitably tolled where 'extraordinary barriers' prevent the plaintiff from asserting [his] rights in a timely fashion, such as 'legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence.'" *Guarantee Tr. Life Ins. Co. v. Kribbs*, 2016 IL App (1st) 160672, ¶ 48 (quoting *Thede v. Kapsas*, 386 Ill.App.3d 396, 403 (3d Dist. 2008)). The

8

degree of diligence required is a "fact-specific inquiry, guided by references to the hypothetical reasonable person." *Ralda-Sanden v. Sanden*, 2013 IL App (1st) 121117, ¶ 20.

In addition to their FOIA request,[4] plaintiffs' counsel made discovery requests in other lawsuits against Officer Kelly, asking for all relevant incident reports. In those cases, the City withheld all information implicating Kelly in the shooting of Hernandez.[5] Plaintiffs argue that between sending the FOIA request and engaging in discovery in other cases, they exercised reasonable diligence. As support, plaintiffs rely on *Bryant v. City of Chicago*, 746 F.3d 239 (7th Cir. 2014). In *Bryant*, a pro se plaintiff filed timely claims against the City, police superintendent, and two unnamed officers and moved to compel the City to disclose the officers' names before the statute of limitations expired. *Id.* at 242–43. Plaintiffs here were not so diligent. Discovery by plaintiffs' counsel in other cases was not conducted on behalf of Davila or her children. So aside from the FOIA request, they did nothing to identify the officers responsible. Plaintiffs knew that Chicago police officers caused the injury, and they too could have filed suit against the superintendent as a nominal defendant along with unnamed officers and used discovery to determine their identities. *See, e.g., id.*; *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 561 (7th Cir. 1996). Instead, they did

---

[4] Documents bearing on allegations of police misconduct are public information and a plaintiff can request them through the Illinois Freedom of Information Act. *Kalven v. City of Chicago*, 2014 IL App (1st) 121846, ¶ 32.

[5] It is not clear from the complaint when plaintiffs' counsel began representing the minors and the Hernandez estate, or whether that occurred before learning about Officer Kelly's involvement.

9

nothing. Had they filed suit and sought discovery, they could have learned of Officer Kelly's involvement and pursued their claims against him and the City. Plaintiffs suspected the City would not cooperate because of its behavior in the past, but that does not excuse them from trying. Though plaintiffs' counsel perhaps reasonably believed Officer Kelly was not involved, they did not use reasonable diligence to learn who was, and they offer no reason why they could not discover Officer Corral's role in the shooting. Equitable tolling does not apply.

### 2. *Equitable Estoppel*

Equitable estoppel, sometimes called fraudulent concealment, applies when the defendant takes active steps (including hiding evidence) to prevent the plaintiff from suing in time. *Cada*, 920 F.2d at 450; *Shanoff v. Ill. Dept. of Human Servs.*, 258 F.3d 696, 702 (7th Cir. 2001). Because the motivation behind equitable estoppel is a general disapproval of inequitable conduct, federal courts borrowing state statutes of limitations apply the federal version of equitable estoppel, which does not require the exercise of due diligence by the plaintiff. *Shropshear*, 275 F.3d at 598. The focus is on the defendant's misconduct, but a plaintiff must also show that she reasonably relied on that misconduct and that she filed suit promptly after the conduct that resulted in estoppel was removed. *Ashafa v. City of Chicago*, 146 F.3d 459, 463–64 (7th Cir. 1998). As evidence of the City's misconduct, plaintiffs point to the City's discovery violations and failure to disclose Officer Kelly's role in Hernandez's shooting in other lawsuits where Kelly was a named defendant and in response to the FOIA request.

10

That Kelly was involved is critical, plaintiffs argue, because it is his history of misconduct that makes the City liable.

The City's refusal to release the officers' names in response to the FOIA request does not trigger equitable estoppel because a reasonable plaintiff would not rely on that misconduct when he could file suit and use discovery to find out who was involved. Plaintiffs also argue that they reasonably relied on the City's discovery disclosures in other cases—which were supposed to include all incidents Kelly had been involved in and did not include any information about the Hernandez shooting—and that those omissions induced them not to file suit.[6] Though that may have prevented the plaintiffs from knowing about the City's liability, it does not explain why they could not have sued unnamed officers, and brought any discovery misconduct to the court's attention. And because *Monell* is a theory of liability and not a separate cause of action, there was no reason for plaintiffs to wait until learning about the City's involvement to file this lawsuit. Officer Kelly's disciplinary history may have strengthened plaintiffs' argument for *Monell* liability, but it was unreasonable for plaintiffs not to file suit simply because they did not know that one specific officer with a history of misconduct was involved.

Plaintiffs learned of Officer Kelly's involvement in a deposition in another lawsuit in June 2016 but did not file their original complaint until November 2017.

---

[6] There is no allegation that the plaintiffs were depending on other litigation conducted by their lawyers for other clients, or that discovery produced in other lawsuits could be used for other purposes (ordinarily, a confidentiality order would limit such use). But for purposes of the motion to dismiss, I will infer these facts in plaintiffs' favor.

11

Even if it were reasonable to wait to file suit until learning Kelly was involved, plaintiffs did not file suit promptly after discovering that information. *See Ashafa*, 146 F.3d at 464. Equitable estoppel does not apply.

### 3. *Illinois's Fraudulent Concealment Statute*

Though federal courts apply the federal doctrine of equitable estoppel, the Illinois codified doctrine of fraudulent concealment may also render federal claims timely. *See Smith v. City of Chicago Heights*, 951 F.2d 834, 837 (7th Cir. 1992) (considering whether the statute tolled the plaintiff's § 1983 claims). The Illinois Fraudulent Concealment Statute provides a five-year limitations period from the time of discovery where a party "liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto." 735 ILCS 5/13-215. Illinois courts construe this provision to encompass only fraudulent concealment of the cause of action, not concealment of the identity of the tortfeasor. *Kribbs*, 2016 IL App (1st) 160672 ¶ 35.

Plaintiffs point to the same misconduct asserted with respect to equitable estoppel: that the City withheld information about Officer Kelly's misconduct. But while plaintiffs argue they did not know the identity of the officers or therefore that the City was liable, defendants did nothing to conceal the cause of action itself—the officers' excessive force—so the fraudulent-concealment statute does not extend the limitations period.

Because none of the tolling doctrines plaintiffs rely on apply, the estate's federal claims based on excessive force are time-barred. A statute of limitations is an

affirmative defense, but dismissal under 12(b)(6) is appropriate "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). It is clear from the complaint that plaintiffs' claims accrued on the day the officers shot Hernandez. Even if defendants improperly withheld the identify of Officer Kelly to avoid triggering *Monell* liability, plaintiffs had all the information necessary to file their complaint within the statute of limitations and any reliance on the City's misrepresentations was unreasonable.

### C. Access to Courts

Plaintiffs also allege that defendants violated the children's constitutional right of access to the courts. To state a violation of this right, plaintiffs must allege (1) the City hindered their efforts to pursue a nonfrivolous legal claim and (2) they consequently suffered a concrete injury. *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000). For the reasons discussed, plaintiffs have not alleged that the City hindered their efforts to pursue a legal claim. Plaintiffs had everything they needed to file this lawsuit on time, and any misconduct by the City did not impede their access to the courts.

### D. Illinois Wrongful Death Act

The minors bring Illinois Wrongful Death Act claims pursuant to 740 ILCS 180/1. Defendants withdrew their argument that these claims were untimely. Because the federal claims are dismissed, I decline to exercise supplemental

13

jurisdiction over the state wrongful-death claims and dismiss them without prejudice. *See Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017).

Dismissal of the federal claims is with prejudice. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "district courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). Because plaintiffs would not be able to fix the issues justifying dismissal of their federal claims, namely, the absence of a constitutional violation against the children and the expiration of the statute of limitations, dismissal of those claims is with prejudice.

## IV. Conclusion

Defendants' motion to dismiss, [30], is granted. The state-law claims are dismissed without prejudice. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: October 17, 2018